UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY G. HUNT,

                    Petitioner,                    Case Number: 04-10046
                                                   Honorable David M. Lawson

v.

HUGH WOLFENBARGER,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Anthony G. Hunt, a state prisoner presently confined at the Mound
Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254 asserting that he is in custody in violation of his constitutional rights.
The petitioner's present custodian is Raymond Booker, but when he filed his petition he was
confined at the Macomb Correctional Facility where Hugh Wolfenbarger is the warden.

The petitioner was convicted of first-degree criminal sexual conduct, Mich. Comp. Law §
750.520(b), two counts of felonious assault, Mich. Comp. Law § 750.82, assault with intent to
commit great bodily harm, Mich. Comp. Law § 750.84, and felony firearm, Mich. Comp. Law §
750.227b, on August 31, 1999 following a jury trial in the Wayne County, Michigan circuit court.
He was sentenced to concurrent prison terms of twenty to fifty years for the first-degree criminal
sexual conduct conviction, six to ten years for the assault with intent to do great bodily harm
conviction, and thirty to forty-eight months for each felonious assault conviction. These sentences
are to be served consecutively to two years imprisonment for the felony firearm conviction. The
petitioner raises eighteen separate claims in support of his allegation that he is being held in

violation of his constitutional rights. The respondent has filed an answer to the petition asserting that the claims are either procedurally defaulted, lack sufficient factual development, or lack merit. The Court finds that the state court of appeals's decision in this case was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. The petition therefore will be denied.

## I.

The convictions in this case arise from an altercation that took place between the petitioner and his wife, Janice Porter, on October 22, 1998 while the two were riding in the petitioner's vehicle. Although the petitioner and Porter were separated at the time of the incident, they continued to share a sexual relationship.

On the day of the incident, the petitioner drove to Porter's workplace, accompanied by their two young daughters, to pick up Porter and take her back to his home. While en route, he indicated that he was very angry because he discovered some phone numbers of other men in Porter's phone book. The petitioner confronted Porter with this information, and while she was attempting to explain, the petitioner became enraged and began hitting her in the face with his fists. The petitioner then brandished a gun and threatened Porter with it as he yelled and pointed the gun in her direction. The gun discharged, missing Porter, but shattering the passenger side window. At that point, the petitioner struck Porter across the face with the gun.

When the couple arrived at the petitioner's home, the argument continued as they were entering the house. The petitioner directed the girls upstairs to their bedroom and ordered Porter to the kitchen. While continuing to argue with and threaten Porter, the petitioner put some water in a tin mixing bowl and placed it on the stove to boil. As the water was coming to a boil, the

petitioner ordered Porter to take off her clothes. The petitioner then "slapped" the boiling water off the stove and onto Porter. She was severely burned and tried to treat her injuries with cold water. However, the petitioner would not allow her to do so and ordered Porter into the basement, at which time he forced her onto the floor and raped her anally. After the petitioner ejaculated, he called for his daughters and directed them to run a cool bath for Porter in order to help treat her burns. The petitioner fell asleep a short time after Porter finished her bath. Once the petitioner was sound asleep, Porter snuck out of the residence and haled a cab to her own home.

Soon thereafter, Porter went to her in-laws' home located just behind her house. The petitioner's family members encouraged Porter to go to the hospital to receive treatment for her injuries. Porter agreed and went to Sinai Grace Hospital the same day. However, she did not mention the sexual assault to medical personnel or to officer Daniel Vickers who was called to the hospital to interview Porter about the assault. It was not until she began receiving follow-up treatment for her burns and other injuries that she revealed that the petitioner sexually assaulted her during the argument. Officer Vickers went to the petitioner's home on the same day of the attack, arrested him, and confiscated some evidence which was in plain view (i.e., a weapon and a female undergarment).

Dr. Joseph Kosnik, an emergency room physician, testified about Porter's injuries. He stated that she received significant injuries to her eye, head, and jaw area. Most serious were her burn injuries; he anticipated that Porter will sustain permanent loss of pigment and scarring. Porter had already undergone debridement procedures and significant time in the burn unit at the hospital.

The petitioner did not dispute any of these facts, with the exception of his vacillating testimony about whether he and Porter engaged in consensual sex. Testifying on his own behalf,

-3-

the petitioner asserted that this entire set of circumstances arose from an argument that got out of hand and that he did not intend to cause Porter any harm.

Following his conviction and sentencing, the petitioner, through counsel, filed a direct appeal in the Michigan Court of Appeals, raising two issues: (1) whether the petitioner was denied his constitutional right to represent himself at trial; and (2) whether the petitioner's sentence was improperly scored. The petitioner subsequently filed a supplemental *pro se* brief raising the following nineteen claims: (1) whether the petitioner's constitutional rights were violated when he did not receive a prompt probable cause determination relative to his warrantless arrest; (2) whether the petitioner was denied his constitutional rights when he was illegally seized; (3) whether the petitioner's due process rights were violated at his arraignment; (4) whether the petitioner's due process rights were violated at his preliminary examination; (5) whether the prosecutor knowingly used perjured testimony; (6) whether the petitioner's constitutional rights were violated when the trial court allowed a witness to verify the complainant's statements as the same statements made to the witness; (7) whether evidence was improperly excluded; (8) whether the petitioner was denied effective assistance of counsel; (9) whether the petitioner was denied the right to self-representation; (10) whether the petitioner's constitutional rights were violated when the trial court judge allowed testimony after the petitioner received a ruling in his favor; (11) whether the prosecutor's comments deprived the petitioner of a fair trial; (12) whether the petitioner's constitutional rights were violated by prejudicial comments made by the trial court judge; (13) whether the burden of proof was shifted by the prosecutor and the trial court judge; (14) whether the petitioner's constitutional rights were violated when he was charged under several sub-sections of a single statute for purposes of trial, conviction, and sentence; (15) whether the petitioner's constitutional rights were violated when he

was charged with sexual misconduct as a married spouse; (16) whether the petitioner's constitutional rights were violated when his standby counsel failed to perfect a direct appeal when requested; (17) whether the petitioner was denied a fair trial due to jury bias; (18) whether the petitioner's constitutional rights were violated when defense counsel did not have erroneous information removed from the petitioner's pre-sentencing report; and (19) whether judicial misconduct deprived the petitioner of a fair trial. The Michigan Court of Appeals affirmed the petitioner's convictions on November 22, 2002. *People v. Hunt,* 2002 WL 31938728 (Mich. App. Nov. 22, 2002).

While the decision before the Michigan Court of Appeals was pending, the petitioner filed two actions with this Court. The first case was a civil rights matter, which was dismissed as being frivolous on March 14, 2000. *Hunt v. State of Michigan, et. al.*, No. 00-70640 (E.D. Mich. Feb. 2, 2000) (Rosen, J.). The second case was a habeas petition that was dismissed without prejudice on exhaustion grounds on March 22, 2000. *Hunt v. State of Michigan, et. al.*, No. 00-70198 (E.D. Mich. Jan. 19, 2000) (O'Meara, J.).

Following the state appellate court's decision, the petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court raising the following twenty issues, many of which mirror those claims raised in the Michigan Court of Appeals: (1) whether the petitioner's constitutional rights were violated when he did not receive a prompt probable cause determination; (2) whether the petitioner was denied his constitutional rights when he and his possessions were illegally seized without a warrant; (3) whether the petitioner's due process rights were violated at his arraignment; (4) whether the petitioner's due process rights were violated when his preliminary examination was not held timely; (5) whether the prosecutor knowingly used perjured testimony; (6) whether the petitioner's constitutional rights were violated when the trial court allowed a witness

to make hearsay statements; (7) whether the petitioner's constitutional rights were violated when the trial court failed to hear a motion; (8) whether the trial court erred when it appointed the petitioner an attorney who provided ineffective assistance; (9) whether the trial court erred when it engaged in "sham trial tactics" as a method of depriving the petitioner of his right to self-representation; (10) whether the petitioner was denied his constitutional rights when prejudicial "prior bad act" evidence was admitted into evidence in order to show behavior in conformity with the violations with which he had been charged; (11) whether the prosecutor's comments deprived the petitioner of a fair trial; (12) whether the burden of proof was shifted by the prosecutor and the trial court judge; (13) whether the petitioner's constitutional rights were violated when he was charged pursuant to several sub-sections of a single statute for purposes of trial, conviction, and sentence; (14) whether the petitioner's constitutional rights were violated when he was charged with sexual misconduct as a married spouse; (15) whether the petitioner's constitutional rights were violated when his standby counsel failed to perfect a direct appeal when requested; (16) whether the petitioner was denied a fair trial due to jury bias; (17) whether the petitioner's constitutional rights were violated when defense counsel did not have erroneous information removed from the pre-sentence report; (18) whether the petitioner's due process rights were violated when the government engaged in outrageous conduct; (19) whether the petitioner was denied ineffective assistance of appellate counsel; and (20) whether the petitioner was denied due process, a fair trial, and a fair review when he was denied full disclosure during trial. The Michigan Supreme Court denied leave to appeal. *People v. Hunt,* 468 Mich. 940, 664 N.W.2d 218 (June 30, 2003) (Table).

The petitioner thereafter filed the present petition for a writ of habeas corpus asserting the following eighteen claims: (1) whether the petitioner was denied the right to self-representation at

trial and pre-trial; (2) whether the petitioner was denied the right to prefect his appeal due to the ineffective assistance of appellate counsel; (3) whether the petitioner was denied effective assistance of trial counsel at pre-trial and at trial; (4) whether the trial court conducted *voir dire* in a prejudicial manner; (5) whether the petitioner was denied a fair trial and due process; (6) whether the petitioner was denied due process when he did not receive a prompt probable cause hearing regarding his warrantless arrest; (7) whether the petitioner's conviction was obtained as a result of his illegal arrest and by the use of illegally seized evidence; (8) whether the petitioner was denied his constitutional rights when he was not arraigned within the time period prescribed by law; (9) whether the petitioner was denied his constitutional rights when his preliminary examination was not held within the time period prescribed by law; (10) whether the petitioner was denied his constitutional rights to due process and a fair trial when the state failed to provide full disclosure by way of discovery and when several motions went unheard by the trial court; (11) whether the petitioner was denied his rights to due process and a fair trial when the state charged him with criminal sexual conduct even though he was married to the victim; (12) whether the petitioner was denied a fair and impartial jury; (13) whether the petitioner was denied a fair trial due to the cumulative effect of errors by the trial court judge, the prosecutor, and appointed defense counsel; (14) whether the petitioner was denied a fair trial and due process when defense counsel failed to have numerous errors removed from the pre-sentence report; (15) whether the petitioner was denied his constitutional rights at sentencing; (16) whether the petitioner was denied his constitutional right to a fair trial when the government engaged in outrageous conduct; (17) whether the petitioner was denied his constitutional right to a fair hearing by the Michigan Court of Appeals when the court made numerous errors in its factual

findings and made other findings based on an inadequate record; and (18) whether the Michigan Supreme Court erred when it denied the petitioner's appeal.

The respondent has filed an answer to the petition asserting that the claims should be denied as procedurally defaulted, for lack of factual development, or for lack of merit.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21

(quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

As an initial matter, the respondent asserts that several of the petitioner's claims are subject to dismissal because of procedural default. The respondent maintains that claims four through nine, eleven, twelve, and fourteen were not properly preserved for appeal in the state courts. He therefore contends that the Court may not consider these claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). However, procedural default is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Court deems it more efficient in this case to proceed directly to the merits of the petitioner's claims, except where otherwise noted.

B.

The petitioner first contends that he is entitled to habeas relief because he was denied the right to represent himself at trial and pre-trial proceedings despite his assertions to the trial court judge verbally and with written correspondence that he wanted to represent himself. The Sixth

Amendment grants a criminal defendant the right to represent himself in criminal proceedings. *Faretta v. California,* 422 U.S. 806, 834-35 (1975); *United States v. Jones*, 489 F.3d 243, 248 (6th Cir. 2007). To trigger this right, however, two conditions must be satisfied. First, the accused must "knowingly and intelligently" waive the right to counsel after having been apprised of "the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. Second, a defendant's request for self-representation must be made clearly and unequivocally. *Raulerson v. Wainwright*, 469 U.S. 966, 969-70 (1984); *United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1995). The right to self-representation is waived if it is not timely and unequivocally asserted. *Jackson v. Ylst,* 921 F.2d 882, 888 (9th Cir. 1990). The right to self-representation may also be waived through conduct that indicates that the defendant is vacillating on the issue or has abandoned his request altogether. *Wilson v. Walker,* 204 F.3d 33, 37 (2d Cir. 2000). Therefore, although a defendant has the right to represent himself in criminal proceedings, "the right to self-representation is not absolute." *Martinez v. Court of Appeals of California,* 528 U.S. 152, 161 (2000).

A review of the record discloses that the trial court was informed prior to the preliminary examination that the petitioner desired to represent himself during his trial court proceedings. Although attorney Steven Fenner already had been appointed to represent the petitioner, the petitioner continued to request self-representation. The trial court allowed the petitioner to represent himself at his preliminary examination with the assistance of Fenner as stand-by counsel. During the preliminary examination, Fenner handled the questioning of witnesses with no objection from the petitioner. Subsequently, the petitioner personally filed several motions and sent correspondence to the trial court without the assistance of counsel. However, the petitioner stated on the record during a pre-trial conference that attorney Steven Fenner would be representing him

at trial, and Fenner did so.  The petitioner also testified on his own behalf at trial and no objections or issues were raised regarding Fenner providing legal representation.

The Court finds that the petitioner did not clearly and unequivocally invoke his right to self-representation.  Although he sent correspondence to the trial court and expressed at times that he wanted to represent himself, he also allowed attorney Fenner to represent him with no objection and stated on the record that he wanted Fenner to be his attorney during trial proceedings.  Therefore, the Court finds that the petitioner's self-representation claim has no merit, and the Michigan Court of Appeals's conclusion that the petitioner waived his right to self-representation  was not contrary to or an unreasonable application of federal law.  *See People v. Hunt*, 2002 WL 31938728, *1-2 (Mich. App. Nov. 22, 2002).   Accordingly, as to this claim, habeas relief is denied.

## C.

The petitioner asserts as his sixth and eighth claims that he was not arraigned in a timely manner following his warantless arrest.  He alleges that he was arrested without a warrant on October 22, 1998 and was not arraigned until October 26, 1998.  "[T]he Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest."  *Riverside v. McLaughlin,* 500 U.S. 44, 47 (1991) (citing *Gerstein v. Pugh,* 420 U.S. 103 (1975)).   The Supreme Court has held that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*."  *McLaughlin*, 500 U.S. at 56.  The Michigan Court of Appeals found that the petitioner failed to preserve this issue for appellate review because he did not raise it in the trial court.  *People v. Hunt*, 2002 WL 31938728, *2-3 (Mich. App. Nov. 22, 2002).  The appellate court further found that the petitioner could not overcome this obstacle because he could not show plain

error and had failed to substantiate his argument with facts. *See id.* at *3. Nonetheless, this Court will address the merits.

As a factual matter, it appears that the petitioner is correct that more than 48 hours elapsed before a judicial determination of probable cause was made, although his analysis is somewhat askew. The trial court docket sheet, submitted as a part of the Rule 5 materials, shows that although the prosecutor's office recommended the issuance of a warrant on October 24, 1998, that warrant was not signed by a judicial officer until October 25, 1998. Since the signing of the warrant amounted to a judicial determination of probable cause, the petitioner's arraignment on October 26, 1998 becomes irrelevant for purposes of the present claims. Nevertheless, because the petitioner was arrested on October 22, 1998, the petitioner's detention without a finding of probable cause lasted for approximately 72 hours and was therefore presumptively unreasonable. *McLaughlin*, 500 U.S. at 57; *Cherington v. Skeeter*, 344 F.3d 631, 643 (6th Cir. 2003).

However, the mere fact that a violation of *McLaughlin* may have occurred does not imply that the petitioner is entitled to habeas relief. The Sixth Circuit discussed the appropriate remedy for such a violation in *United States v. Fullerton*, 187 F.3d 587 (6th Cir. 1999). Fullerton's warrantless arrest was not validated by a judicial officer until 72 hours after his arrest, and he argued that the trial court should have suppressed evidence obtained in connection with the arrest. *Id.* at 590-91. The Sixth Circuit rejected the argument on the grounds that the evidence at issue was actually seized before the delay occurred, but it also endorsed the concept that *McLaughlin* violations are "susceptible to harmless error analysis." *Id.* at 592. In this case, the petitioner has not alleged that he was prejudiced in any way by the delay by, for example, the seizure of evidence or eliciting of incriminating statements. *Compare with Powell v. State*, 113 Nev. 41, 930 P.2d 1123,

1126 (1997) (discussed in *Fullerton*, 187 F.3d at 592). Moreover, as the Sixth Circuit noted in *Fullerton*, the Supreme Court has yet to delineate "the appropriate remedy for a *McLaughlin* violation." *Fullerton*, 187 F.3d at 591. Therefore, because federal habeas relief is only available when a "state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law *as determined by the Supreme Court of the United States*," 28 U.S.C. 554(d)(1) (emphasis added), the Michigan Court of Appeals's decision rejecting this claim cannot provide a basis for habeas relief. *See Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004) (explaining that federal habeas courts "may not look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law") (internal quotations omitted). However, as the court in *Fullerton* was quick to point out, the petitioner is not necessarily without options if he did in fact suffer a *McLaughlin* violation. If appropriate, the petitioner "may follow the lead of numerous other victims of *McLaughlin* violations and file a . . . claim [under] *Bivens v. Six Unknown Narotics Agents*, 403 U.S. 388 (1971)." *Fullerton*, 187 F.3d at 592.

## D.

The petitioner asserts in his tenth claim that the trial court erred when it failed to hear several motions, thereby precluding the petitioner from presenting relevant, exculpatory, and mitigating evidence in support of his defense theory. The petitioner's claim does not warrant habeas relief for two reasons.

First, the record reflects that the petitioner waived his right to have the state court hear some of his motions. The petitioner filed several discovery motions with the trial court. During a pre-trial conference with the trial court judge, it was acknowledged that these motions had been filed; and

attorney Fenner represented to the trial court judge, on the record and in front of the petitioner (who did not object), that he would take care of resolving those motions since his office received as a matter of course the information the petitioner was seeking to obtain. The issue was not raised again at any point before or during the trial proceedings. A waiver ordinarily is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). *See also United States v. Riddle*, 249 F.3d 529, 534 (6th Cir. 2001). Whether there has been a waiver must depend on the relevant facts and circumstances. *Johnson*, 304 U.S. at 464. The facts in this case indicate that the issue was raised prior to trial, and it was resolved with the petitioner's knowledge and without any objection. The Court finds that this claim has been waived, and therefore the Michigan Court of Appeals's determination that the petitioner waived this claim was reasonable. *People v. Hunt*, 2002 WL 31938728, *4 (Mich. App. Nov. 22, 2002).

Second, even if this issue were not abandoned, a claim that the trial court violated state laws pertaining to evidentiary issues generally is not cognizable on habeas review unless the error rendered the proceedings so fundamentally unfair as to deprive the petitioner of due process of law, which the Fourteenth Amendment prohibits. *McAddo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire,* 502 U.S. 62, 69-70 (1991)). The issue before the Court is evidentiary in nature, as it deals with discovery motions and the admission of evidence. However, since the motions were resolved without further objections from the petitioner, the Court cannot find that there was an error so fundamentally unfair as to deprive the petitioner of due process. Therefore, habeas relief is denied relative to this issue.

E.

The petitioner's thirteenth claim is that the prosecutor, the trial court judge, and his defense counsel made so many errors throughout the course of the trial proceedings that the cumulative effect of those errors resulted in the denial a fair trial. Addressing this claim, the Michigan Court of Appeals held that any error, whether considered cumulatively or an individual basis, was not so significant as to deprive the petitioner of a fair trial. *People v. Hunt*, 2002 WL 31938728, *8 (Mich. App. Nov. 22, 2002). The Supreme Court has never held that cumulative errors may form the basis for issuance of a writ of habeas corpus. *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore, the state court's resolution of this issue cannot be contrary to or an unreasonable application of Supreme Court precedent so as to warrant habeas relief.

F.

The petitioner asserts as his fifteenth claim that his constitutional rights were violated at sentencing because the trial court engaged in improper scoring of several offense variables under the sentencing guidelines.

> The petitioner's argument that the trial court erred in scoring offense variables of the state sentencing guidelines is not cognizable on habeas review. "A federal court may not issue the writ on the basis of a perceived error of state law," *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and a claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

*Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007).

Federal habeas courts do not interfere with custody on the basis of perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *Estelle*, 502 U.S. at 67-68; *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Since the petitioner has not presented any evidence to support a claim of being denied fundamental fairness

during his trial court proceedings, the petitioner's claim that the court improperly scored the guidelines range is not cognizable on habeas review.

## G.

The petitioner contends as his seventeenth claim that the Michigan Court of Appeals erred in its affirmation of the petitioner's convictions by relying upon flawed factual findings and an inadequate and ambiguous record. Therefore, the petitioner argues, he was denied his right to a fair direct appeal. The mere fact that a state court rendered its decision based on an ambiguous record does not justify habeas relief. *See Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (explaining that "the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary"). Moreover, the Court is convinced by its independent review of the record that the petitioner's convictions are supported by adequate evidence. Therefore, the Court will deny this claim for lack of merit.

## H.

The petitioner's eighteenth claim is that the Michigan Supreme Court erred when it denied his application for leave to appeal. This Court will not grant or deny habeas relief based upon a general claim that the state court was wrong in its evaluation of a case. Moreover, appellate review by the state supreme court is discretionary. *See* Mich. Ct. R. 7.302. The petitioner's claim that the Michigan Supreme Court abused its discretion in applying the state law governing when leave to appeal should be granted is not cognizable on habeas review. *See Stuart v. Wilson*, 442 F.3d 506, 513 n.3 (6th Cir. 2006).

# I.

The petitioner maintains as his twelfth claim that he was denied a fair and impartial jury because (1) his jury pool primarily consisted of Caucasian individuals from suburban Wayne County, (2) there were individuals on the panel who had been physically abused by their spouses, (3) one juror, who was employed as an investigator, handled sexual assault and child abuse matters, (4) the judge made prejudicial comments to the jury during *voir dire*, and (5) the prosecutor made prejudicial comments during her opening statement. The Michigan Court of Appeals held that the issue had not been preserved with an appropriate objection at trial. *See People v. Hunt*, 2002 WL 31938728, *5-6, 8 (Mich. App. Nov. 22, 2002). Therefore, the court evaluated the merits of the issue under a plain error analysis, and relief was denied. Although the petitioner may not have placed a proper objection on the record, the petitioner claims that he filed a motion with the trial court regarding the issue. Accordingly, the Court will review the issue on the merits.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury." U.S. Const. Amend. VI. Nevertheless, "[t]he Sixth Amendment does not obligate state trial courts to investigate every allegation of bias or juror misconduct." *Williams v. Bagley*, 380 F.3d 932, 949 (6th Cir. 2004) (citing *Mu'Min v. Virginia,* 500 U.S. 415, 427 (1991)). Rather, Supreme Court precedent "stress[es] the wide discretion granted to the trial court in conducting *voir dire*" to uncover juror bias. *Mu'Min*, 500 U.S. at 427.

The petitioner first argues that his jury pool was not a fair cross-section of his community. In order to prevail on this argument, the petitioner must show: "(1) that the group alleged to be excluded is a 'distinctive group' in the community; (2) that the representation of this group in

venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury selection process." *Duren v. Missouri,* 439 U.S. 357, 364 (1979). Other than the petitioner's blanket statement that "jury selection consisted of (90%) white males and females from the suburbs," he offers no other evidence to substantiate his claim or to fulfill the *prima facie* requirements necessary to present the issue of an unfair jury venire.

Next, the petitioner challenges the fact that the panel may have included jurors who were victims of domestic violence and one juror whose employment entailed work with domestic violence and child abuse cases. However, the petitioner has not set forth any factual support for these allegations in his petition. Moreover, if these individuals were on the petitioner's jury panel, he has failed to demonstrate how these individuals might have tainted the verdict.

Finally, the petitioner claims that the trial judge and the prosecutor made prejudicial remarks that infected the jury pool and made them impartial and biased against the petitioner. The trial court judge conducted a demonstrative and animated *voir dire* with the use of hypothetical examples, and it is the nature of these examples to which the petitioner objects. The petitioner claims that the trial judge improperly asked jurors how they would react if a witness testified that another person, while riding in a car with the witness, told the witness that he did not like her and then shot a bullet at her head, which happened to miss. *See* Tr. Tr. at 87-88 (August 24, 1999). The jurors stated that they would infer the assailant had fired the shot with the intent to murder. *Id.* at 88. In response, the judge stated that this would be proper, assuming the jurors credited the witness's testimony. *Ibid.* As to the prosecutor, the petitioner objects to the reference she made in her opening statement to a movie entitled "The Burning Bed." The prosecutor said:

> And some of us know people or ourselves have been involved in things involving domestic abuse or maybe we've seen it on TV or the movies, like the Burning Bed with Far[r]ah Fawcett. And you watch these things on TV and in the movies and you think to yourselves things don't really happen like this, I mean, this is TV. This is the movies, they have to make it more interesting and they have to make it more scary. But ladies and gentlemen, you're going to see during the course of this case that things like that really do happen. And things like that really did happen.

Trial Tr. at 145 (August 25, 1999).

The Court finds that none of these statements prevented the assembly of an impartial jury panel. Although the judge's hypothetical may have been strikingly similar to the facts of the case, it may have been to the petitioner's advantage to determine in advance those jurors who were irrevocably committed to conviction; such practice may have increased rather than inhibited the identification of an impartial panel. *See United States v. Houston*, 110 Fed. Appx. 513, 539-40 (6th Cir. Sept. 7, 2004). Moreover, viewed in context, it appears that the trial judge was trying inartfully to demonstrate the concept of circumstantial evidence in the issue of intent, or that if believed, the jury could base its conclusion on the testimony of a single witness. The prosecutor's remarks were not so inflammatory as to deprive the petitioner of a fair trial. To be sure, it is a "cardinal rule that a prosecutor cannot make statements calculated to incite the prejudices and passions of the jurors." *Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2006) (internal quotation marks omitted). Here, however, the prosecutor's brief reference to a movie concerning spousal abuse was exceedingly tame. The prosecutor did not recite any of the film's more graphic details, but simply referred to the film for the idea that people often think abusive relationships only exist in the movies or on television. On balance, this claim has no merit.

In addition, because the petitioner's fourth claim also alleges prejudicial comments made during *voir dire*, that claim will likewise be denied. The petitioner does not brief, reference, or

discuss any of the trial judge's statements other than those made during *voir dire*, and the Court has determined that those statements were not improper.

J.

In his fourteenth claim, the petitioner argues that his rights to due process and a fair trial were violated as a  result of defense counsel's failure to have several errors removed from his pre-sentence report.  The Michigan Court of  Appeals denied relief on the grounds that there was no factual development of the issue.  The appellate court stated:

> On appeal, defendant does not identify what portions are inaccurate.  Although defendant refers to OV 12 being improperly scored, the presentence report does not contain any information suggesting that defendant committed more than one sexual penetration, so this reference does not support a finding of inaccuracy.  Because defendant has failed to specify the factual basis for his claim that the presentence report is inaccurate, appellate relief is precluded.

*People v. Hunt,* 2002 WL 31938728, *8 (Mich. App. Nov. 22, 2002).  Relief is also precluded in this Court because the petitioner has not designated any prejudicial inaccuracies in his habeas petition. The petitioner points to certain characterizations of the events as misleading, but the Court finds no substance to the claims.  For example, whether the tin bowl of scalding hot water was "slapped" toward Ms. Porter or "thrown" towards her, her testimony was that she was intentionally burned with boiling water by the petitioner. Whether the petitioner put a gun to Porter's head and pulled the trigger or whether he put the gun near Porter's head and pulled the trigger, the fact remains that he had a gun pointed in Porter's direction and pulled the trigger shattering the passenger-side window. Yet the petitioner contends his counsel performed ineffectively in failing to object to these alleged inaccuracies.  The Court disagrees.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  To

show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Counsel's performance is deficient if the attorney's representation "fell below an objective standard of reasonableness." *Id*. at 688. An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The deficiency prong aside, it is obvious that the petitioner in this case cannot establish prejudice: even if the petitioner's counsel had objected and favorably resolved the alleged inaccuracies, that turn of events would have had no impact on the outcome of the case. The Court therefore will deny habeas relief with respect to this claim.

## K.

In his fifth claim, the petitioner alleges simply that he was denied a fair trial and due process. In support of this broad and vague claim, the petitioner essentially itemizes any and all issues that have been raised throughout the appellate process but have not necessarily been enumerated as issues for habeas review. The petitioner fails to set forth any facts to substantiate this laundry list of issues or describe the nature of his contentions. It appears to the Court that the petitioner is attempting to advance another cumulative-error argument. However, the Court reiterates that the Supreme Court has never held that cumulative errors may form the basis for issuance of a writ of habeas corpus. *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). This claim will therefore be denied.

L.

In his ninth claim, the petitioner contends that his due process rights were violated because his preliminary examination was not held within fourteen days contrary to Michigan Compiled Law § 766.4. Relative to this claim, the record reflects the following: (1) a preliminary examination was scheduled within the fourteen-day time period, but was adjourned at the request of the petitioner; (2) the magistrate subsequently adjourned the preliminary examination so the petitioner could undergo a competency examination; and (3) subsequent adjournments were made at the request of the petitioner. Ultimately, the examination was held on February 11, 1999, three-and-a-half months after the petitioner's arrest. However, the record does not show that the petitioner objected to or complained about the delay. Therefore, the Michigan Court of Appeals reviewed this issue under a plain error analysis. *People v. Hunt*, 2002 WL 31938728, *3-4 (Mich. App. Nov. 22, 2002).

The Court detects no violation of the petitioner's right to due process or a speedy trial, the only conceivable claims that could arise from this allegation. The state court of appeals's ultimate determination that no prejudice resulted from the delay, coupled with the manifest justification for the delay itself (all attributable to the petitioner) convinces the Court that there is no basis for habeas relief on the petitioner's ninth claim. In addition, the Court notes that, insofar as this claim is couched in terms of a violation of state law, it is not cognizable on habeas review. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

## M.

In the petitioner's seventh claim, he contends that his conviction was obtained by use of evidence obtained by an illegal arrest and seizure. Habeas relief cannot be granted on the basis of this claim: "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir.2000) (internal quotations omitted).

Michigan provides ample opportunity for litigation of Fourth Amendment claims. Typically, such claims are addressed before trial by means of a motion to suppress. *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357 (1965) (holding that motions to suppress must be timely made where the factual circumstances constituting the illegal seizure are known to the defendant in advance of trial). However, even absent objections in the trial court, Michigan appellate courts entertain Fourth Amendment claims where it appears that the evidence in question affected the outcome of the trial. *People v. Harris*, 95 Mich. App. 507, 509; 291 N.W.2d 97 (1980). In this case, the Michigan Court of Appeals reviewed the petitioner's Fourth Amendment claim for clear error despite his failure to file a motion to suppress before trial. *People v. Hunt*, 2002 WL 31938728, *3 (Mich. App. Nov. 22, 2002). The petitioner does not dispute that the Michigan courts provided him

-24-

with a procedural mechanism to present his Fourth Amendment claim. He instead simply argues that the claim was incorrectly decided. The petitioner was provided with a full and fair opportunity to litigate his Fourth Amendment claim in state court, despite the fact that he raised it for the first time on direct appeal. Therefore, his claim is barred in this habeas proceeding by the rule in *Stone v. Powell*.

N.

In his eleventh claim, the petitioner maintains that he was improperly charged with criminal sexual conduct when the victim was his spouse. He asserts that such a charge conflicts with his First Amendment and spousal privilege rights and that the statute under which he was charged is therefore unconstitutional. The statute at issue, Michigan Compiled Law section 750.520l, states in part: "A person may be charged and convicted under sections 520b and 520g [defining, respectively, first-degree criminal sexual conduct and assault with intent to commit criminal sexual conduct] even though the victim is his or her legal spouse." The Michigan Court of Appeals found that this issue was not preserved for appellate review. *People v. Hunt,* 2002 WL 31938728, *7 (Mich. App. Nov. 22, 2002). The state court further found that there was no merit to the petitioner's argument, stating:

> First, defendant has failed to show that the statute impinges on any of his First Amendment freedoms. If a person commits a sexual assault against a spouse, that does not implicate any First Amendment rights with regard to the marital relationship.
>
> Second, . . . M.C.L. §750.520l became effective well before the charged offense was committed, giving defendant fair notice of the proscribed conduct. In addition, the plain wording of M.C.L. §750.520l provides fair notice of what conduct is prohibited.
>
> Third, M.C.L. §750.520l does not confer such unfettered discretion on the trier of the fact to determine whether the statute has been violated. The state clearly bars any type of criminal sexual conduct committed against a person's spouse.

-25-

*Ibid.*  The Court agrees with this assessment.  Procedural default aside, the petitioner's argument is plainly frivolous.  The state appellate court's resolution of this claim was not contrary to or an unreasonable application of federal law, and habeas relief therefore is denied as to this claim.

O.

The petitioner asserts in his sixteenth claim that the "outrageous governmental conduct" that took place during his trial resulted in the deprivation of his constitutional right to a fair trial. He looks to four of his other claims set forth above as the basis for this argument: (1) whether the petitioner was denied the right to prefect his appeal due to the ineffective assistance of appellate counsel (the second claim above); (2) whether the petitioner was denied effective assistance of trial counsel at pre-trial and at trial (the third claim above); (3) whether the trial court conducted *voir dire* in a prejudicial manner (the fourth claim above); and (4) whether the petitioner was denied a fair trial and due process (the fifth claim above).  The Court has already addressed the latter two of these claims, and the resolution of those issues does not substantiate the petitioner's claim of "outrageous governmental conduct."  Therefore, the Court will address the petitioner's claims of ineffective assistance of trial and appellate counsel.

1.

The petitioner lists approximately fifteen problems he had with trial counsel's legal representation (the petitioner's third claim).  The more significant allegations include counsel's failure to appear at pre-trial hearings, failure to object to the judge's conduct in *voir dire*, failure to assert the petitioner's legal right to self-representation, failure to object to the prosecutor's opening statement, failure to file motions on the petitioner's behalf, failure to impeach testimony, and failure to challenge the jury pool.  These claims are governed by the rule of *Strickland v. Washington*, set

forth above. Applying this test and reviewing the record for plain error in light of the petitioner's failure to preserve the issue for appeal, the Michigan Court of Appeals found that there was no evidence of prejudice flowing from trial counsel's alleged shortcomings. *People v. Hunt*, 2002 WL 31938728, *4-5 (Mich. App. Nov. 22, 2002). This Court agrees.

To establish prejudice under *Strickland* stemming from the multitude of supposed errors allegedly committed by trial counsel, the petitioner must show that but for the errors of his trial counsel, there is a reasonable probability that the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). The petitioner has not presented any factual or legal support to substantiate a claim of prejudice under this standard. Instead, the petitioner merely has listed several compaints that he had with his trial counsel's legal representation with nothing more to fulfill the requirements of *Strickland*. Therefore, the state appellate court's rejection of this claim was not contrary to or an unreasonable application of *Strickland* and progeny.

2.

The petitioner also asserts that he was denied the effective assistance of appellate counsel (the second claim set forth in the petition). Again, the petitioner lists several problems he had with his appellate counsel's representation, such as failing to visit the petitioner more frequently, failing to file pleadings timely, failing to provide the petitioner with copies of pleadings, failing to investigate claims, and failing to address certain issues. The Supreme Court has held that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court explained:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every "colorable" claim suggested by a client

would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Appellate counsel's decision to forego certain claims and to pursue other issues on direct appeal falls within that purview. The petitioner has not presented any factual or legal support to substantiate an ineffective assistance of appellate counsel claim under *Strickland*. Further, the petitioner cannot establish that he was prejudiced by appellate counsel's conduct as the underlying claims set forth above lack merit and factual support.

III.

For the foregoing reasons, the Court finds the petitioner has not shown that he is in custody in violation of the Constitution of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt#1] is **DENIED**.

It is further **ORDERED** that the motion for findings of facts or in the alternative for judgment [dkt# 48] is **DENIED** as moot.

s/David M. Lawson                <br>DAVID M. LAWSON<br>United States District Judge

Dated: August 27, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 27, 2007.

s/Felicia M. Moses
FELICIA M. MOSES